Good morning, Your Honor. May it please the Court, my name is Thomas Doves from Labatton-Suchero. With me today at council table is my colleague Joe Fonte and also here is Peter Binko, our California counsel. And seated behind me is the Honorable Gary King, the Attorney General of the State of New Mexico, who has come to try to emphasize the importance of this case to the state of New Mexico. I have been told that the 20 minutes is to be split as between my remarks and those of Broadcom. Broadcom's counsel has indicated it needs three minutes and I would like to reserve three minutes for rebuttal, so net six minutes to begin. We represent the State Investment Council of the State of New Mexico. I must admit that the writ should be granted because the order below clearly violates this case, this Court's decision in Kavanaugh. Secondly, and independently, the order is infirm because it offends notions of comedy and federalism and is in effect an injunction directing the Attorney General of New Mexico to violate New Mexico State procurement laws in the way it's, it, pursuant to its administrative scheme, it selects counsel. Even if those two grounds are not sufficient for reversal, we submit that derivative counsel has a potential or actual conflict which is debilitating. And finally, I'd like to address the reassignment issue. As background, as the Court is aware, this is an options backdating case by which Broadcom, inconsistent with generally accepted accounting principles, lowered its options cost and thus raised its costs. Also by way of background, we're now 12 years into the Private Securities Legation Reform Act and we're several years after Sarbanes-Oxley. There are roughly at this point about 100 to 115 10b-5 or Section 11 securities class actions brought every year. There are, in light of that number, 30 cases that are very much like this, which are 10b-5 stock options backdating cases. So there are a fair number of cases. There are also 125 derivative cases, many of which are in Federal court, also dealing with various options backdating issues. The point is that this is a very important issue and what's more important is that this case is in all likelihood the biggest of all of those 30 cases. Has any motion been made yet to consolidate these into one district? No, there hasn't. The perception of the Bar is that this is not going to be subject to a 1407, that the fact patterns are sufficiently disparate that it is not amenable to multi-district treatment. Even to pretrial treatment? Even to pretrial treatment, because of the how the the phenomenon of options backdating is easy to describe, that how it played out in each different company is different and how the auditors dealt with it is sufficiently distinct in each case. So it's hard to predict what the multi-district panel will do, but there has been no such motion and I don't anticipate one. Let me let me argue for Judge Riehl. Sure. And then you respond to it why why that's wrong. I'll try, Your There's going to be a huge amount of discovery. That's correct. Attorneys are going to be working for months, perhaps years, putting these cases together and then they're going to be tried. No question. So Judge Riehl decides that case management is very vital and Judge Riehl decides that I would like to only talk to one lawyer to do this case management, so I need a case management sole lawyer representing all the parties performing. So he appoints one and then we get the second case comes in and because he has the low number it gets assigned to Judge Riehl. Judge Riehl wants to continue his case management and so he said he orders that this person is going to be an attorney for case management in the second one and the argument is made well there may be a conflict. Judge Riehl says there's no conflict now, we'll get to that and we get later. I'd like just to have one person there to do the case management and then later on we can do it. Now that would be Judge Riehl's thinking, which he never gives us, but that's that's not uncommon. But if I were Judge Riehl sitting there and based upon what I did read in the record, that's what Judge Riehl was thinking. Now the question then is, it seems to me, is is there a certain discretion with a district court judge facing a huge case for case management purposes to do something a little different at the discovery stage until something occurs that he has to change? So why don't you respond to that? Well let me start by saying that as your Honor remarked, that's totally supposition because we don't know what Judge Riehl was thinking and I think it's an equally plausible inference that he was picking lawyers that he likes. Now the question is... Well we always have a presumption in the Ninth Circuit that the district judges always do right, so let's assume that he's thinking the way I'm thinking. All right, well let's assume that he's thinking the way that you're thinking, even though the record is silent on the question. Can case management trump a client's rights under the Private Securities Litigation Reform Act? And the answer is no. The Private Securities Litigation Reform Act, as interpreted by this Court in Kavanaugh, of which your Honor is obviously familiar, was very clear that it's a client's prerogative to choose counsel. And that statutory ability to choose counsel is vital in order for it to represent it. Now having been choosing counsel, can the district court thereafter make the lawyers work together and even put teeth in it if they don't work together? Yes they can do that and we're prepared to do that and we submitted a coordination order. But while we're on the issue of case management, I mean case management is one of these, you know, nice highfalutin phrases, but it can also hide a variety of sins. And derivative counsel have played, in effect, their next card for us to see, which is if one looks at Exhibit 15, derivative counsel below submitted what they think the coordination order should be as an alternative in case Judge Reel appointed us for New Mexico, which is what obviously New Mexico wants and does not believe it can hire Mr. Hyman even if it wants to. And what does derivative counsel think a coordination order looks like? And this will end up later in a discussion on possible reassignment. Derivative counsel below said, issues common to derivative and class actions, however, including discovery, court appearances, selection and preparation of experts, as well as most pre-trial motion practice would be directed by coordinating counsel, namely him. Now that's not a coordination order, that's a castration order. Now a fairly drafted coordination order would be fine and we don't have a problem with that and we submitted one below and as long as we're permitted to defend our client's rights, we can and should coordinate with derivative counsel and we do this every day because there are often, as your class actions and the lawyers work together and they get the job done and if they don't, they get it from the district judge. But what's going on here is in the guise maybe, if this is what he was thinking, of case management, they're trumping New Mexico's rights to choose its own counsel and derivative counsel clearly have the view that they want to use this bromide of case management to basically put them where they are now, running the show and so that New Mexico's counsel is under the thumb of derivative counsel and that is totally inconsistent with the purpose of the Private Securities Litigation Reform Act as succinctly interpreted by this court in Kavanaugh. There's simply no doubt that what this court said in Kavanaugh that these litigants get their choice of counsel and I would respectfully refer the court to the CalPERS brief where they say if this decision stands, they believe it will chill institutional investors from getting into these cases, which is precisely what Congress wanted and is frankly the only way that this system is, whatever abuses were in it that Congress saw, is going to be fixed. But we didn't get to this issue in Kavanaugh because it wasn't before. You did not get to this issue in Kavanaugh, but you certainly interpreted the statutory. That's right. And there's nothing that interferes with the statute, it could be argued, that each of the parties can still appoint their counsel. The question is, should there be something more in the area of case management? And your issue is, no, because they won't be accounting correctly for both of these group parties. That is, you have a situation here where there's disparate interests between the two and even in case management, that may create a problem. That is going to create a problem and there are disparate interests here and it's going to be very hard if a case management order is basically a thin camouflage to let derivative counsel run the show that New Mexico's rights can be pursued. And you're indicating the interests are different between the two. The interests are clearly different. Which would be significant during case management orders? I think that those interests have to be balanced in the case management order and it has to be acknowledged that there are different interests and therefore one counsel can't, you know, put its thumb over other counsel, which is not to say they don't have to work together efficiently and effectively, but they do have different interests. We want money from Broadcom. They are precluded from asking for money from Broadcom. They know that, we know that, everybody knows that. They can go after the directors until the cows come home, but they can't get money from Broadcom. And that's where we want to get the money from. And that is irreconcilable and it's built into this situation and there's no way to get around it. And it's just made worse. It's made worse by doing what the judge below did, which is, in the guise of case management, denying New Mexico its counsel and indeed imposing upon them counsel that they cannot retain pursuant to New Mexico law. And there's no question that that's what he did. And I would also direct the Court's attention to the amici from the various States. I mean, we have attorneys general from different sides of the aisle, from different States that have totally different political complexions, and they come together on one issue. One, that they, their internal administrative procedures by which they select counsel have to be respected. And secondly, they come together on the issue that this appearance problem is so bad that the Court should seriously consider reassignment, and they urge reassignment. So they come together on those two things, even though in many ways they differ politically and on other issues. So I think that's very important for the Court to focus on. The conflict issue, if the Court reaches it, and we don't think it's necessary that the Court has to reach it. We think it can be decided by virtue of Kavanaugh or Kavanaugh plus a coordination order, so long as the coordination order is, you know, a real coordination order and is not what I call a castration order. Secondly, it can be totally disposed of on the grounds of federalism and comedy, and that is a novel issue, first impression. But clearly those attorneys general want some comfort that their internal administrative procedures as to hiring counsel are entitled to some respect. But if you reach the conflict issue, the parties are in agreement that its Rule 310 applies, and really the dispute is a somewhat narrow dispute. Is it an actual conflict? We think it is an actual conflict, and that's essentially the argument that I just made. But beyond that, derivative counsel concede that at very least it's a potential conflict, and that would be Judge Reel's thing, if you were here. When it comes, I'll handle it. That's right. When it comes down the road, I'll handle it. The problem with that is that 310, even for potential conflicts, requires written consent, so you get a failure to follow the rules even under what they concede is the potential conflict situation, so that puts it over the line to a debilitating conflict even under Sub 1 for potential conflicts if you don't buy our argument under Sub 3, which deals with actual conflicts, which we think are manifest throughout this record. Now, there is another one. Even if we were to agree with you, counsel, as to this, it seems to me that the worrisome part of your argument that I have worried about the most as to who to reassign this on, if I must reassign, even if I buy what you're telling me on any one of these bases, what should I do when it goes back? It seems to me that we have some pretty good authority, and Sears Roebuck suggesting that I have three things that I need to think about there. One, whether the original judge would reasonably be expected upon remand to have previously expressed views. Second, whether the reassignment is advisable to preserve the appearance of justice. Now, as I read Sears, the first of these factors are of equal performance, and I can find on either one of those. But the last, whether reassignment would entail waste and duplication out of proportion to any gain in preserving this appearance. Those seem to be the standard that I'm really looking at. I'm really worrying on this record, it doesn't seem to me, unless there's things that you see that I don't, that Judge Reel could not, with appropriate guidance from us, that he cannot appoint counsel, if we buy your argument. He's got to approve counsel only, and then go forth and do what he has to do in this case. Well, Your Honor is right that I think Sears is the test or the paradigm. And what we would, let me start with the easiest one first. We think that the appearance of justice is the issue. We think, and we rely on the Attorneys General for that proposition. I mean, they don't have no ax to grind here in particular, and they're very concerned. And the brief says they're very concerned. So I think that that is sufficient to fit the second prong. The third prong is also... Well, I don't necessarily have to buy just because the Attorney General believes it. No, I understand that. What I have to do is find it. And there are a lot of judges. I mean, I know I'm only an Idaho boy, so these Idaho judges, you know, we have a totally different strain up there. Some of them are maybe pretty succinct like Judge Reel, and some are more verbose, maybe like Judge Smith. But nonetheless, when we tell them what they're supposed to do when it goes back, they have to do what they have to do. And all we're trying to find is can we reasonably expect this good judge to have difficulty putting out of his mind or her mind previously expected views or findings. I mean, he's been on the bench forever doing this, been overturned by this court before and having been sustained before. Whether reassignment is advisable to preserve the appearance of justice, those sound like lofty goals, but I'm trying to come up with something in specific that I can suggest would not meet that. Well, let me answer it this way. The third prong, which deals with the cost, I don't think that's really an issue. This is really very early in the game, so I think that goes without saying. I agree with you. I think it's easier to deal with it on the second prong, if you're giving me the hypothetical that I have to deal with it on the first prong, which I gather is what Your Honor wants me to do. You can speak to me on either, because I think, frankly, Sears-Robach says the first of those two factors are of equal importance, and a finding on one of them would support the review. No, we read the case the same way. We can prevail if either one of the first two is met. We think the appearance of justice argument should carry the day. We think that what has happened here has been sufficiently dramatic, sufficiently troubling that it is merited, but that's for the court to decide. The first issue, you know, I'm not the best person to say. I mean, I have read the myriad decisions of this court dealing with this district judge, and, frankly, this court is in a better position to analyze the question on number one than I am. And I don't think, you know, I don't have a degree in psychoanalysis, and I would certainly hope for the best. But hoping for the best and fearing the worst, I don't know. What I know is that certain troubling things happen. I know ex parte communications were made without an apparent pushback from the court. I know a lot of federal district judges, and if I sent them an ex parte letter, I think I'd get a phone call from them saying, even people who I know socially, who'd say, you know, Tom, what the heck do you think you're doing? Well, that didn't happen here, and that's very troubling. And so I would, and maybe it's a punt, but I don't intend it as a punt, but I think if you review the case law from this district judge over the years, I think, you know, a reasonable observer would say that number one might be implicated. But that's for you to decide. I've only appeared before him twice, and succinct is being euphemistic. But, you know, there are many different judges of many different stripes, and we all know that. Are you really arguing that as to meet the first test, I can look at everything the judge has done from first to last or just the record in front of me? Well, I think that the case, well, it would be unfair to say that outside the record, you should analyze everything that this distinguished judge or long-serving judge has done in his life. That would be unfair. But I think that we have dealt with, and the court is familiar with, a number of the cases that he has handled and has an impression about whether he carried, even on remand, he carries out what he's instructed to do. And there is some evidence in some of this case law that when he believes he's right, he is hesitant to do that. Now, I hope that wouldn't be the case. But the cases say what the cases say. And this Court of Appeals has been observing the district judge for a lot more years than I have, and it has to come up with a decision on prong one, which is why I'm advocating the more neutral, the more objective ground two. And as we both agree, I can meet either one to prevail. And I think that the attorney generals, being on the sidelines, know you don't have to buy what they say, but I think that there certainly are relatively disinterested witnesses to this. And I think what they say stands on its face, that they are terribly, terribly concerned with what has happened. Now, what can you do? I mean, do you want me to get into the mechanics of it? Does it go back to the wheel, or do you pick somebody? I don't know, and I'm not sure I really care. Because if you get there, you can find a mechanic to accomplish that goal. But given the magnitude of the case, given the seriousness of the case, given everything that's going on, I think, you know, we respectfully think, and it's a hard decision, we know, but that the court should consider in the interest of justice in your supervisory capacity what should be done to put this train back on the tracks and protect New Mexico's interests, protect the statute, and to protect what the statute is designed to do, which is to get institutional investors who can choose their own lawyers, litigate these cases, instead of having clients like in the derivative case who own 100 or 200 shares. You're over time. Thank you, Your Honor. We can give you one minute. Thank you, Your Honor. We'll give you extra time. I will be brief. May it please the Court, Dan Leffler of Irela Menola for Broadcom Corporation. Mr. Dove's already explained the nature of the conflict when a derivative lawyer who is supposed to be protecting the interests of the corporation also wears the hat of the class action counsel who is supposed to be suing the corporation, so I won't belabor the point. I wanted to respond to two things. One was Judge Wallace's question about case management. Given the conflict, it's never an appropriate case management decision to put a lawyer in the position of basically litigating for a company and against a company at the same time. It's not at all uncommon in securities litigation to have parallel class action proceedings and derivative proceedings. They are coordinated. Discovery is done in an appropriate and efficient manner through consolidation orders, through discovery, referees, and things of that nature. So the case management rationale can never justify putting a company, Broadcom, for example, in the position of having a lawyer who is supposedly representing the company's interests also suing the company at the same time. So that's just not a permissible justification for what the judge did. The last point I would make is there are real practical considerations about settlement that suggest that this was an ill-advised decision. Both derivative cases and class action cases are representative litigation matters. Cases cannot be settled unless there is approval by the court. One of the elements of approval by the court is the adequacy of the representation in either the derivative or the class case. So if we're in a position where one lawyer with a conflict is pursuing both of those cases, even if it's what's now perceived to be an early stage, you'd very easily find yourself in a situation where one or the other of the cases is resolved or both of the cases are resolved. And you find yourself in a situation where how can the district court conclude on the adequacy of the representation question or how could this court make a conclusion on that without a collateral litigation on the conflict and what the motivation was for the lawyer in recommending a settlement in one case or the other. So it's not just a theoretical issue. It's a very practical issue. And I appreciate the court's indulgence. We would respectfully request that the court reverse the district court. Thank you. Can you add two minutes to Mr. Leffler's time? Thank you. May it please the Court. Richard Hyman, appearing on behalf of myself, I suppose, in a way. Strictly speaking, I'm not standing here to oppose the primary relief that's requested in the petition for writ of mandamus, namely the reversal of Judge Reel's order appointing me as lead class counsel. And frankly, if it hadn't been for footnote 7 in the petition itself, and that's the footnote that talked about reassignment, I wouldn't be here at all. The reason for the response to the petition that we filed, prompted primarily by footnote 7, was first and foremost to fairly and responsibly describe the record below and in particular the reasons that animated Judge Reel's decision. And, Judge Wallace, I respectfully in this case disagree with you and certainly with Mr. Doves. I think Judge Reel did tell us exactly why he made the ruling that he made. He didn't elaborate on it. I'll be the first to agree on that. But in my response to the petition, I cite to the record and to Judge Reel's comments in the record at the various hearings where he made it very clear that it was case management specifically that animated his reason and was the reason for appointing a single lawyer to serve as both derivative lead counsel and lead class counsel. In the response to the petition, I also sought to address certain of the arguments that were made in support of the petition that I think are not well taken. The conflict of interest one in particular, I think, is erroneous. And we've cited a number of cases, including cases within the Ninth Circuit, in the response in which courts upheld against a conflict of interest argument single representation in a derivative and class case, finding that where the facts, the factual basis for the cases are the same, there is no conflict, disqualifying conflict, between a single attorney representing both a derivative and a class case. Now, that's not to say, and I said this before Judge Reel at the hearing on the motion for reconsideration, that at some point in the course of litigation of that type, a conflict might arise, settlement being the most obvious. And, of course, one of the things that the cases have said about this is that when and if that kind of a situation arises, the Court can deal with it in a variety of different ways. And Judge Reel was very cognizant of that when he entered the order that he did in denying the motion for reconsideration. When it comes to Kavanaugh ---- We've made it very clear in Kavanaugh that the district judges are not going to be doing the appointment of lawyers for the classes. So what we have to decide now is whether there's a violation of Kavanaugh and a violation of the statute. And I would like to have you respond to this question, too, because it seems to me the real issue is whether the judge's need for case management, as he perceives it, can trump the statute which directs the judge to let them make their own decision who will represent them. And how would you argue that case management issues trumps what appears to be, and under Kavanaugh what we've held to be, a right that only the parties have? As I said at the outset, I'm not standing here to make that argument, but let me address the point. In the response that we filed, we did seek to lay out competing interests, case management being the primary one, that a district court, such as Judge Reel, could take into account or might well wish to take into account in making that decision. But in the end, I do not advocate that those circumstances override the decision in Kavanaugh and the language of the statute. I concede that, at least under the circumstances before this court, that that order should not stand, that, in fact, New Mexico should, its authority under the statute to appoint lead class counsel should be honored. And the circumstances of this case, while a district court might come to a different conclusion, and this has to do now with the next point I'm going to come to, while a district court might come to a different conclusion, given the pressures and issues that he anticipates are going to come before him, could come to a different decision, I don't advocate that in these circumstances. But when it comes to reassignment of the case, I feel quite strongly that the circumstances of this case do not begin to arise, and now I'll use the language of this court, to the exceedingly rare and compelling circumstances that would warrant the reassignment of a case to a different district judge. And I also suggest that the fact that four attorneys generals were willing to sign off on a brief that Mr. Dubs or his firm wrote, parroting the language that is in the footnote to their own brief, is not any weight, or should not be accorded any weight, as to whether or not the appearance of justice has been violated here by the fact that a judge made an error of law in appointing someone other than New Mexico's selected counsel. The most that can be said, I would submit, is that Judge Real erred as a matter of law in making that appointment. But there's nothing else in the record to suggest that the appearance of justice has been offended. There's certainly nothing in the record to suggest that if this court reverses his order appointing me as lead class counsel, that he won't abide by that order and appoint New Mexico's choice. There's nothing in the record to suggest that there's any reason to suspect that Judge Real won't do exactly what he is supposed to do and has been doing for, lo, these many years in serving as a district court judge in the Central District of California. Counselor, there is some concern to me in a couple of decisions he's made since the decision. For instance, in denying the motion for consideration and the way he denied such motion for reconsideration of his decision, despite what I would suggest substantial briefing and argument demonstrating his clear error in what he'd done, the way he responded to that is of some concern. His denying of the stipulation for additional time for the filing of a consolidated complaint after the mandamus petition was resolved seemed another problem to me. I mean, it's a stipulation of counsel, and yet he wouldn't even allow additional time for filing of the consolidated complaint. Now, when I take the standard that I'm supposed to be looking at, which I suggested before, it's my worry, based on those actions, how do I meet, I mean, it seems to me that whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his mind or her mind the previously expressed views might come into problem. I was especially concerned with the denying of the stipulation, even for filing the consolidated brief. Well, I think, Your Honor, that, again, the reasons that, to me, animate that decision are that the judge real was of the view that what he had done was correct. Now, I agree that the briefing, including the briefing that I submitted on the point on the motion for reassignment, indicated to the judge that it was the view of the parties that under the Kavanaugh standard, his order couldn't stand. But I don't believe that's what Judge Reel thought was controlling. As I've indicated in my response, and I think the record bears this out, Judge Reel asks at the hearing on the motion for appointment of lead plaintiff and lead counsel whether or not New Mexico was in agreement with what he was doing, which was appointing derivative counsel to also be lead class counsel. Judge Reel doesn't ask rhetorical questions of counsel in terms of whether or not they agree or disagree with his orders. It's clear to me that that's what Judge Reel thought he was doing, and he also thought that he obtained the consent of New Mexico to the appointment of lead class counsel as myself. Now, in my response to that, I don't believe that this Court should rest its decision on that because I accept Mr. Dubbs and New Mexico's position that they did not understand at the time that that's what Judge Reel meant. But I do believe that's what Judge Reel thought. So when it came to the motion for reconsideration, I think what he said, and I think it's fairly interpretable in his comments, was he was telling Mr. Dubbs at that argument that you had the opportunity at the original hearing to tell me these things, and you didn't when I asked you whether or not you agreed with the appointment of lead class counsel. So in fairness, if on remand the Judge Reel is told, no, that wasn't a basis upon which the ruling could be made, he will accept that ruling. Now, as to the order with respect to the filing of the consolidated amended complaint, again, in Judge Reel's mind, his understanding was that he had appointed a lead class counsel. The case needed to proceed forward, and there wasn't any reason, as he saw it, having entered a legitimate order appointing lead class counsel that the case shouldn't proceed by the means of the filing of a consolidated amended complaint. And after all, Your Honor, the filing of a consolidated amended complaint would in no way interfere with the process of the writ of mandamus. But it just seems to me, having been on the district bench once or twice in my life, that if both parties are in there and it's a stipulation of the parties that this ought to be the way and that this is an issue they're really worried about, that suggesting, based on some idea of my own, that no, we're not going to do it that way, we're going to do it the way I want to do it, maybe it then meets the standard that I'm talking about in one. Respectfully, Your Honor, I do not believe that's the case. I mean, after all, it's not all that unusual for a district court judge to decide he doesn't or she doesn't agree with the way that the parties agree a matter should proceed. I can't imagine how many times I've gone in front of a district judge or a superior court trial judge with the opposition party asking for a continuance, sometimes of trial, sometimes of hearings, and being told, no, you're not going to have a continuance. You're going to appear before me because I've got a docket to run, and despite the fact that both parties are in agreement that a matter should be put over or a trial should be continued, trial judges routinely reject those kinds of agreements, at least in my experience. And I think that's all you're seeing here. Well, I know that I have routinely rejected some of those type things. I'm just having you respond. But I don't usually routinely do that in these kind of issues, given what I've had in front of me as to the motion for reconsideration and also given counsel, who is reasonably in front of me now, with which I have such great respect, I don't just generally disregard everything that happens in those situations. And I'm trying to now determine what to do under subscript 1. Well, as I said, I think, Your Honor, that this is a matter of a district court judge being of the view that he wanted to run his docket, and one of the first important steps in a class litigation of this type, and it's a routine step, I will say, is the filing of a consolidated complaint. And that is what then gets the case moving forward. And the fact of the matter is that when the filing of a consolidated complaint is delayed, as it has been now in this case for a considerable period of time, the case gets delayed. And that clearly is something that most district court judges don't favor. Let me on that same point, though, address one other aspect of this request for reassignment. In fact, and to some significant extent, this case is not at the outset of its proceedings. It may be true that the class case is at the outset of its proceedings because the consolidated amendment complaint has not yet been filed and motions to dismiss and so forth have not yet been filed. But in the derivative case, we are fairly far along. We have passed through the first major hurdle that every derivative case faces, and that's the motion to dismiss for failure to make a pre-filing demand. That motion was denied. Subsequent to that motion being denied, all of the defendants in the derivative case filed Rule 12b-6 motions to dismiss, a stack of them about that high. We opposed. Those matters came before Judge Reel. He heard and decided them. And those issues are now behind us. The parties on the defense side have filed answers to the complaints, and we have already begun the process of discovery. We've begun the process of discovery by means of a stipulation that immediately upon the resolution by this court of the lead class counsel situation, the defendants, particularly Broadcom, the corporation itself, will produce to us most of the documents that they have already produced to the government, either to the grand jury or to the SEC. That's a voluminous amount of material that will be produced to us, but that will be in our hands within a very short period of time after this court rules, and we will then be aggressively reviewing, analyzing, and assembling those documents. So if the court were to take this case away from Judge Reel, all of that work and all of the investment that the judge has made in those issues will be lost. And I might say that the reason I say that is because while it's the derivative case, the derivative case was filed first in front of Judge Reel, the class case second. The class case was reassigned to Judge Reel as a related case under the central district's rules. So there's a fairly good chance that if this court were to cause a reassignment of the class case, which is being requested, the derivative case would end up trailing and going over to the same new judge, who would then have to redo the whole bit that we've already been through. And when I say that, I want to emphasize that on the Rule 12b-6 motions, that stack of motions like this, 95% of the issues that were raised in those motions with respect to the derivative complaint are going to be repeated verbatim in the motions to dismiss that will be addressed to the class complaint, because the same claims, literally, the same legal claims that are made in the derivative case are also made in the class case and are going to be the subject of the same motions to dismiss that the derivative claims were subject to. So Judge Reel has already invested an enormous amount of judicial time and energy and resources in working through those motions and thinking about them and ultimately resolving them. And I would submit that that is a very weighty matter to consider under the third prong of the three-part test that your honors are looking at in terms of deciding the motion for reassignment, or the request for reassignment. If there are no further questions, I'm done. Thank you. Your time has expired. You may have one minute. Thank you, Your Honor. What I heard was a concession that the judge made a mistake on Kavanaugh, which I'm glad to hear, although he's never made a motion to withdraw from the class case below. Counsel, I don't think I'd criticize him for that. I don't criticize him at all. Excuse me. You're interrupting me. I think it's the highest time of an attorney when he appears before our court as an officer of the court to give an opinion when it's asked. He clearly didn't want to do that because it's not in his best interest, but he did so. And I think criticizing for that purpose would be inappropriate. I didn't mean to criticize him. I merely tried to clarify the record. Mr. Hyman is a class guy and is a distinguished advocate, and I have not said anything. And although we disagree on certain issues, well, I've said enough. So please don't misconstrue what I said. I was trying to restate where I thought we were and not try to criticize him personally, which I would not do. On the issue of the stip, it goes to the issue of adamance because the cases talk about adamance, and I think the question or the fact about the stip is evidence of adamance. And just by way of two seconds of background, this is not a complaint in a slip-and-fall case. I mean, the complaint in this case will be 200 to 300 pages because the pleading standards are so high that we have to do it that way. So this is no small thing. Secondly, as to how the case has progressed, there are factual similarities. There's no question, but I submit that the fact that they've gone through a round of motions doesn't mean that they're so far down the road. The simple fact of the matter is, in a derivative case, the demand issue is the showstopper, and that's the one. And any new judge can either rely on Judge Reel's rulings to date and just move on forward from that, and as counsel indicated, they have not started their review of documents. Thank you very much. The court's been very generous with its time. This case is submitted.
judges: Wallace, Ikuta, Smith